**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:                                                                    Case No.: 3:10-BK-069999-JAF

Lisa A. Hood,                                                      Chapter 13

      Debtor.

_____/

**JM ASSOCIATES FEDERAL CREDIT UNION'S RESPONSE TO DEBTOR'S MOTION TO ENFORCE DISCHARGE INJUNCTION, STAY CREDITOR'S STATE ACTION AND HOLD CREDITOR IN CONTEMPT (DOC. 180)**

      JM Associates Federal Credit Union ("Creditor") files this response and memorandum of law in response to the Debtor's Motion to Enforce Discharge Injunction, Stay Creditor's State Action and Hold Creditor in Contempt ("the motion") (Doc. 180) and states:

### I. PROCEDURAL BACKGROUND OF THIS BANKRUPTCY CASE AND THE UNDERLYING STATE COURT CASE

      1. The Debtor is seeking a stay of a state court case and for contempt sanctions against Creditor by way of the motion. No other relief is sought.

      2. As outlined more fully below, Creditor is proceeding under an Amended Complaint (the "Complaint") that Creditor filed in St. Johns County ("the state court case"). Creditor's Complaint seeks money damages in counts I and II for a credit card and a line of credit against the Debtor's spouse, Charles Hood ("husband"). The husband has never filed bankruptcy. The husband and the Debtor were jointly obligated on the loans described in Counts I and II of the Amended Complaint when they were made. Both loans were made before the Debtor's petition date. The Debtor's personal obligation to repay those debts has been discharged while husband remains personally liable to repay those debts.

      3. Count III of the Complaint is for replevin of a 2008 Ford Mustang ("the Mustang") that is and always has been jointly owned by the Debtor and her husband. Only the husband was liable to repay the motor vehicle loan which was a purchase money loan. The Debtor, as a joint owner,

signed a security agreement to consent to placement of Creditor's lien on the Certificate of Title to the Mustang. There are valid cross-collateral provisions in the loan agreements the Debtor and her husband signed. Because of this, both are named Defendants in Count III of the Complaint for replevin of the Mustang. In Count III of the Complaint, Creditor is seeking to enforce its *in rem* interest in the Mustang against the Debtor's interest and her husband's interest.

4. The Debtor filed a Chapter 7 bankruptcy case on August 11, 2010. The case was converted to a Chapter 13 case on September 2, 2010. The Debtor completed her Plan and received a discharge on October 8, 2015.

5. Notably, the Debtor failed to disclose her joint ownership in the Mustang as an asset in her Bankruptcy Schedules. In doing so, she deprived the Trustee and this Court of the ability to review, value or administer the Debtor's interest in the Mustang.

6. The Debtor correctly points out in the motion that the initial vehicle loan that gave rise to Creditor's lien on the Mustang was paid in full on April 21, 2014–while the Debtor's Chapter 13 bankruptcy case was ongoing.

7. The husband and Debtor have filed pleadings in the state court case stating their belief that the Mustang is currently worth $29,000. The vehicle loan initially had a balance of $55,000. The value of the vehicle as of the petition date is unknown.

8. The state court case was commenced on May 18, 2016, when Creditor filed a two count Complaint against the husband for money damages as to the Credit Card and Line of Credit. The husband was the only Defendant named in the initial Complaint. A copy of the initial Complaint is attached as **"EXHIBIT A"** [1]**.**

9. In spite of this, the Debtor and her counsel have represented to the Court in the motion that *"On May 18, 2016, the Debtor Lisa Ann Hood, was first sued"* by Creditor. See ¶8 of the motion. This statement is patently false and misleading. As shown by the face of the initial Complaint, the Debtor was **not** a yet a party to the case and therefore was not a named Defendant in Creditor's initial Complaint.

10. After the state court case was filed, Creditor's collections manager advised the undersigned that Creditor had inadvertently overlooked the fact that it retained a lien on the

---

[1] To avoid redundant and unnecessarily voluminous exhibits, the exhibits to the state court complaints referenced in this response are not attached. All such documents are attached to an affidavit signed by James Ryan, CEO of Creditor that was filed in support of its Motion for Summary Judgment in the state court case. That affidavit is referenced below and is attached as **"EXHIBIT E".**

Mustang. The lien on the Mustang was cross-collateralized with a Line of Credit and a credit card by virtue of the terms of the loan documents signed by the Debtor and her husband.

11. The vehicle was titled as "Charles William Hood **OR** Lisa Ann Hood" as the registered owners. The Debtor does not dispute that the vehicle has always been titled in this fashion. See ¶12 of the motion. A copy of the Certificate of Title is attached as **"EXHIBIT B"**.

12. After Creditor advised the undersigned of Creditor's lien on the Mustang, Creditor filed an Amended Complaint on July 27, 2016 [2]. As outlined above, Creditor added a third count in the Amended Complaint for replevin of the Mustang and named the Debtor and her husband as Defendants in Count III of the Amended Complaint to enforce its *in rem* rights to the Mustang. A copy of the Amended Complaint is attached as **"EXHIBIT C".**

13. The Amended Complaint explicitly states that because of the Debtor's bankruptcy discharge, no money damages were being sought against the Debtor. Footnote 1 on page one of the Amended Complaint states:

*Ms. Hood received a bankruptcy discharge in case number 3:10‑bk‑06999‑JAF on October 8, 2015. No money damages are sought against Ms. Hood in this case. She is named as a Defendant solely as to Count Three for recovery of collateral under lien to the Creditor. Creditor's lien remains upon the collateral and therefore Creditor is exercising its in rem remedy as to the collateral described in Count Three.*

14. It is not possible for Creditor to have fashioned a more clear statement that Creditor was only enforcing its *in rem* rights to the Mustang to avoid any appearance that it was trying to "end run" the Debtor's discharge to collect a discharged debt.

15. The Debtor's failure to attach the Amended Complaint to the motion is a material omission of fact and, like the failure to attach the initial state court Complaint makes the motion misleading.

16. On May 5, 2017, the Debtor filed an Amended Motion to Dismiss in the state court case (attached as **"EXHIBIT D"**) and represented the Mustang had a value of $29,100. This was the Debtor's valuation as of May 4, 2017. The value as of the petition date, seven years prior was obviously much higher, but unknown.

---

[2] The Debtor misstated the month and year the Amended Complaint was filed in the motion as **June 27, 2017.** See ¶9 of the motion.

17. A hearing was held in the state court case on May 8, 2017, on the Debtor's Amended Motion to Dismiss and the husband's Motion to Dismiss. The state court case was transferred from the County Court to the Circuit Court upon agreement of the parties because the value of the Mustang caused the County Court to lose jurisdiction.

18. Despite the fact that witness testimony is not permitted at a hearing on a motion to dismiss, the Debtor's attorney in the state court action, Thomas Asbury ("Asbury"), brought Debtor's current bankruptcy counsel to the May 8, 2017, hearing. She was to be called to proffer an opinion on the machinations and legal effect of the Debtor's bankruptcy case on the state court case.

19. Therefore, Debtor's counsel has been well aware for over **eight months** of the so called "emergency" issues now pending before this Court.

20. Creditor filed a Motion for Summary Judgment in the state court case that is set for hearing on February 7, 2018. The hearing on Creditor's Motion for Summary Judgment was noticed on December 15, 2017. It is Creditor's impending summary judgment hearing that counsel has known about since December 15, 2017, that has precipitated the "emergency" situation that is before the Court.

## II. BACKGROUND OF CREDITOR'S RELATIONSHIP WITH THE DEBTOR AND HER HUSBAND

21. Creditor filed a detailed affidavit in the state court case signed by the C.E.O. of Creditor, Mr. James Ryan ("Ryan"). This affidavit was filed in support of Creditor's Motion for Summary Judgment. Ryan's affidavit is a concise chronicle of the Debtor and her husband's business relationship with Creditor. For this reason, Ryan's affidavit and all exhibits referenced in his affidavit are attached as **"EXHIBIT E"**. All the exhibits to Ryan's affidavit are designated numerically to avoid confusion with the alphabetic exhibit designations of the exhibits attached to this pleading.

22. On October 20, 2003, the Debtor and her husband applied for an open-ended line of credit ("the line of credit") from Creditor. A copy of the application for the line of credit is attached to Ryan's affidavit as **"Exhibit One"**.

23. The line of credit was approved and enabled the Debtor and her husband to take multiple advances under the terms of the Loanliner Open End Credit Plan ("the Plan"). A copy of the Plan

is attached to Ryan's affidavit as **"Exhibit Two"**. When advances are taken under a Plan, a "sub-account" number is assigned to each advance.

24. One of the advances the Debtor and her husband took under the Plan was for $5,000.00 that was advanced to the Debtor and her husband on January 24, 2005, as shown on the Loanliner Open-End Disbursement Receipt Plus attached to Ryan's affidavit as **"Exhibit Three"**. This advance was assigned a sub-account number "12".

25. The Debtor and her husband defaulted in payment under the line of credit agreement by failing to make payments as agreed. The last payment the Debtor and her husband made to Creditor on the line of credit was on March 8, 2016, via the Bankruptcy Trustee.

26. As of March 8, 2016, the principal balance owed on the line of credit was $2,477.09. The interest rate on the line of credit is 8.00% with a *per diem* of $0.54.

27. A copy of the loan/pay history of the line of credit is attached to Ryan's affidavit as **"Exhibit Four"**.

28. On November 20, 2003, the Debtor and her husband applied for a VISA credit card ("the credit card"). A copy of that application is attached to Ryan's affidavit as **"Exhibit Five".**

29. The Debtor and her husband were approved to obtain the credit card and the account was assigned sub-account number "300".

30. The Debtor and her husband made charges and/or took cash advances using the credit card account and in doing so, agreed to be bound by the credit card agreement attached to Ryan's affidavit as **"Exhibit Six".**

31. The Debtor and her husband defaulted under the credit card agreement by failing to make payments as agreed. The last payment the Debtor and her husband made to Creditor on the credit card was on September 4, 2015, via the Bankruptcy Trustee.

32. A copy of the pay history for the credit card is attached to Ryan's affidavit as **"Exhibit Seven".**

33. As of September 4, 2015, a principal balance of $3,795.50 was owed Creditor on the credit card account. The interest rate on the credit card account is 14.88% with a *per diem* of $1.54.

34. As outlined above, subsequent to the line of credit and credit card loans being made, the husband took out an auto loan on September 18, 2007, to purchase the the Mustang. A copy of the application and loan documents associated with the auto loan are attached to Ryan's affidavit as **"Exhibit Eight".**

35. As noted above, Debtor signed a separate security agreement because the vehicle was and still is, titled with "CharlesWilliam Hood **OR** Lisa Ann Hood" as joint owners. A copy of the security agreement signed by the Debtor is attached to Ryan's affidavit as **"Exhibit Nine"**. Creditor perfected its lien on the Certificate of Title as shown by **"Exhibit Ten"** to Ryan's affidavit.

36. The husband paid the auto loan in full on April 21, 2014. As noted above, the auto loan, the line of credit and the credit card are all "cross-collateralized" by Creditor's lien on the Mustang. Creditor has never released its perfected lien on the Certificate of Title to the Mustang.

37. Debtor filed Chapter 13 bankruptcy prior to this case being filed. A copy of Debtor's bankruptcy schedules are attached to Ryan's affidavit as **"Exhibit Eleven"**. A copy of Debtor's amended bankruptcy schedules "B" and "C" are attached to Ryan's affidavit as **"Exhibit Twelve"**. A copy of Debtor's bankruptcy case docket is attached to Ryan's affidavit as **"Exhibit Thirteen"** and a copy of the Chapter 13 Plan that was confirmed is attached to Ryan's affidavit as **"Exhibit Fourteen"**. Debtor completed her Plan payments and received a discharge; a copy of which is attached to Ryan's affidavit as **"Exhibit Fifteen"**.

38. Creditor filed a Proof of Claim in the bankruptcy case and the Amended Proof of Claim in the amount of $6,947.78 is attached to Ryan's affidavit as **"Exhibit Sixteen"**. This was the claim that was inadvertently filed as an unsecured claim by Creditor and was only partially paid by the Chapter 13 Bankruptcy Trustee *pro rata,* along with other unsecured creditors.

39. During Debtor's Chapter 13 bankruptcy, Creditor was paid $1,041.85 as its *pro rata* share of the distribution from the bankruptcy estate. A copy of the Bankruptcy Trustee's Claim Summary obtained from the Trustee's official website showing all payments made to Creditor is attached to Ryan's affidavit as **"Exhibit Seventeen"**.

40. All payments from the Bankruptcy Trustee were applied to the line of credit and the credit card before Creditor filed the state court case, as shown by Creditor's account/pay histories attached to Ryan's affidavit as **"Exhibits Four and Seven"**. After all Trustee payments were applied to the debts owed to Creditor, the amounts alleged in the Amended Complaint remained due.

41. As stated above, the state court case was filed May 18, 2016. The Debtor and her husband were served with the Amended Complaint and Order to Show Cause on **September 29, 2016–493 days ago.** Notably, neither the Debtor nor her husband have ever asserted in any pleading

filed in the state court case that Debtor did not know that her name was on title to the Mustang when she filed her bankruptcy petition.

42. Only now, on the eve of a summary judgment hearing, has the Debtor decided the time right to assert that she ***"did not schedule the vehicle at issue because, at the time, her marriage was strained and did not know that her name was on the vehicle".*** The Debtor did not elaborate in the motion what marital difficulties have to do with filing documents with the Court **<u>under oath</u>** that fail to disclose an automobile worth tens of thousands of dollars.

43. No matter what newly found rationale is used to explain failing to list the Mustang as an asset, the fact remains that the Debtor owned a valuable car on her petition date and has only now decided it was time to disclose that fact in the motion in order to stop the state court deciding the issues in that case. Ignorance is not a defense.

### III. Legal Argument and Memorandum of Law

44. In the federal bankruptcy context, it is axiomatic that security interests in property are determined by state law. *See Butner v. United States*, 440 U.S. 48, 55 (1979) and *SEC v. Wells Fargo Bank, N.A.*, 848 F.3d 1339, 1344 (11th Cir. 2017).

45. Under Florida's statutory scheme, liens on titled property are only perfected upon recording evidence of a lien on the Certificate of Title with the Department of Motor Vehicles. *See* § 319.27(1), Florida Statutes.

46. No one disputes that Creditor's lien is perfected on the title to the Mustang and was a <u>purchase money, consensual lien</u> because the Debtor and her husband signed security agreements in favor of Creditor and the loan proceeds were used to purchase the Mustang.

47. The Debtor's argument–that Creditor is unlawfully attempting to enforce its lien and *in rem* remedies to the Mustang–ratifies the fact that Creditor in fact has a perfected lien that is recorded pursuant to Florida law. Put another way, the Debtor admits the obvious fact that she never took any affirmative action in the bankruptcy case to void, alter, value or otherwise impair Creditor's lien. What is more, the Debtor failed to even disclose the Mustang as an asset. Lastly, in his Answer to the Amended Complaint attached as **"EXHIBIT F"** the husband filed **no affirmative defenses** and has therefore waived all defenses he had to the relief sought in the

Amended Complaint and is now legally estopped from forwarding the Debtor's position in this case–particularly because he has never been a Debtor and was not a party to this case. The Debtor's and husband's arguments are all fatally flawed for several reasons.

### 1. THE DEBTOR, HAVING FAILED TO DISCLOSE THE MUSTANG AS AN ASSET UNDER OATH, COMES TO THIS COURT WITH UNCLEAN HANDS AND IS ESTOPPED FROM VOIDING CREDITOR'S LIEN ON THE VEHICLE

48. It is undisputed that the Debtor failed to list the Mustang as an asset in her Schedules. It is also true that Creditor mistakenly filed an unsecured claim in this case and never would have filed an unsecured claim if it realized its cross-collateralized lien on the Mustang was still there at the time it filed its Proof of Claim. However, the Debtor's attempt to "un-ring" the bell and void Creditor's consensual security interest is undermined by her representations, by omission, that were made under oath in her bankruptcy filings. As the Eleventh Circuit has held "A debtor seeking shelter under the bankruptcy laws must disclose all assets, or potential assets, to the bankruptcy court. *See* D'Antignac v. Deere & Co., 604 F. App'x 875, 876 (11th Cir. 2015) (holding that a Debtor prosecuting an undisclosed asset in the form of a discrimination lawsuit was judicially estopped from taking a contrary position) .

49. The omission of significant assets in a bankruptcy case can have several consequences. It may cause the loss of those assets. *See* In re Coastal Plains, Inc., 179 F.3d 197 (5th Cir. 1999), cert. denied, 528 U.S. 1117 (2000) (debtor judicially estopped from pursuing cause of action not listed as asset in schedules). It may give rise to objections to the granting of a discharge. *See* 11 U.S.C. §727(a)(2); *See* Morris Plan Indus. Bank v. Finn, 149 F.2d 591 (2d Cir. 1945) (discharge denied for failure to list U.S. savings bonds); see also 4-521 Collier on Bankruptcy P 521.03 (16th ed., 2017). It may lead to the revocation of a discharge already granted. *See* 11 U.S.C.S. § 727. It may, in rare circumstances, also lead to possible criminal charges. *See* Coghlan v. United States, 147 F.2d 233 (8th Cir.), cert. denied, 325 U.S. 888 (1945) (concealment of assets by attorney for debtor); *see also* 11 U.S.C. §§727(a), (d); 18 U.S.C. §§151–157 and 4-521 Collier on Bankruptcy P 521.03 (16th ed. 2017).

50. Judicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position. The purpose of

the doctrine is clear–to protect the integrity of the judicial process and prevent parties (like the Debtor in this case) from playing "fast and loose" with the courts to suit their own self-interest.

51. The doctrine is generally applied where intentional self-contradiction is being used as a means of obtaining unfair advantage in a secondary forum. *See* Browning Mfg. v. Mims (In re Coastal Plains, Inc.), 179 F.3d 197, 201 (5th Cir. 1999). In the bankruptcy context, cases involving undisclosed prospective claims for damages in not-yet-matured lawsuits are instructive to the facts here.

52. As the Court in *Browning Mfg.* put it: "The rationale for invoking judicial estoppel to apply to parties who fail to disclose claims until after emerging from bankruptcy in such cases is founded upon the notion that the integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets. Courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims [in this case, the Mustang as asset] exist and then subsequently assert those claims for his own benefit in a separate proceeding. The interests of both the creditors, who plan their actions in the bankruptcy proceeding on the basis of information supplied in the disclosure statements, and the bankruptcy court, which must decide whether to approve the plan of reorganization on the same basis, are impaired when the disclosure provided by a debtor is incomplete. *Id.* at 208.

53. As to litigation claims, the Eleventh Circuit has also looked unfavorably upon allowing a debtor to back up, re-open a bankruptcy case, and amend his bankruptcy filings and pick up the "sword" of judicial estoppel to wield against his adversary only <u>after</u> his omission of a litigation claim for damages from the schedule of assets has been challenged by an adversary. *See* Slater v. U.S. Steel Corp., 820 F.3d 1193, 1195 (11th Cir. 2016) (holding that to permit a Debtor to engage in such conduct suggests that a debtor should consider disclosing potential assets only if he is caught concealing them and would diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtor's assets).

54. While the foregoing cases deal with litigation claims, the logic employed is applicable to this case and provides the basis for this Court to prevent the Debtor from effectively voiding Creditor's valid lien. It is true that estoppel cuts both ways in this odd situation and one can make the argument Creditor, by inadvertently filing an unsecured claim, waived its security interest. The fact remains that it is **the Debtor**–not the Creditor–that has the **statutory obligation to list all assets**

**under § 521 of the Code**. The Debtor is the one that must swear under oath to the truthfulness of her Schedules.

55. If Debtors are not held to account for filing complete and honest bankruptcy Schedules, the system cannot function. The Debtor in this case is asking the Court to **reward** her for failing to disclose the Mustang as an asset. This would be a absurd result in that it would sanction and incentivize less than full disclosure. If the Debtor had fully disclosed her assets in this case, Creditor surely would have realized its inadvertent error of filing an unsecured claim.

56. Lastly, the Court should note that the Debtor is not advancing any equitable argument that she somehow relied or changed her position to her detriment because Creditor filed an unsecured claim. The Debtor could not possibly advance this argument, however, because she flatly admits in the motion that she simply "forgot" that she owned the Mustang.

**2. EVEN IF THE DEBTOR HAD PROVIDED TRUTHFUL SCHEDULES AND DISCLOSED THE MUSTANG AS AN ASSET, CREDITOR'S LIEN IS A CONSENSUAL LIEN AND NOT VOIDABLE**

57. It is not disputed by the Debtor or her husband that the lien on the Mustang is a purchase money interest. Significantly, there is also no dispute that Creditor's lien is a **consensual lien**, not judicial or statutory.

58. The Code provides a handful of mechanisms for voiding liens that impair exemptions.

59. Among them is use of 11 U.S.C. § 522. However, that section only permits Debtors to avoid the fixing of a **judicial** lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of § 522. *See* 11 U.S.C. § 522(f)(1).

60. Another avenue for lien avoidance is via preference actions under 11 U.S.C. § 547(b)(4)(a) in situations where a lien was not perfected sufficiently prior to a bankruptcy filing, or was perfected after a petition was filed. This is not the case here.

61. It defies logic to suggest that Creditor's purchase money, consensual lien on collateral could be voided when the Debtor never disclosed the asset to "put it in play" in the first place.

### 3. EVEN IF THE DEBTOR DISCLOSED THE MUSTANG AS AN ASSET, CREDITOR'S LIEN WOULD HAVE SURVIVED THE BANKRUPTCY DISCHARGE

62. It is well-settled in the Eleventh Circuit that a secured creditor's lien remains intact through the bankruptcy, regardless of whether the creditor files a proof of claim. *See* SEC v. Wells Fargo Bank, 848 F.3d 1339, 1344 (11th Cir. 2017) (holding that in the context of receivership claims, the District Court had wide discretion to determine relief in the action, but that power did not extend to barring recovery to a Creditor who failed to file a claim). *See also,* In re Bateman, 331 F.3d 821, 827 (11th Cir. 2003) ("An unsecured creditor is required to file a proof [of] claim for its claim to be allowed, but filing is not mandatory for a secured creditor. In fact, a secured creditor need not do anything during the course of the bankruptcy proceeding because it will always be able to look to the underlying collateral to satisfy its lien.") (citations omitted); In re Thomas, 883 F.2d 991, 997 (11th Cir. 1989) (finding that a creditor's lien was not voided in bankruptcy proceeding, and a proof of claim must only be filed in a Chapter 13 proceeding to preserve a deficiency claim).

63. There have been cases where a secured creditor has been deemed to have waived its security interest by filing an unsecured claim. One such case is from the Middle District, Tampa Division styled *In re Barrera*, 2016 Bankr. LEXIS 4089 (Bankr. M.D. Fla. Nov. 29, 2016). However, the facts of the *Barrera* case bear absolutely no factual resemblance whatsoever to the facts of this case.

64. As a starting point, *Barrera* involved a judgment (not consensual) lien that Chase Bank obtained against Katherina Barrera. After obtaining its judgment, Chase placed a lien on the title to a 2001 Toyota that was owned jointly by Katherina Barrera and her spouse. Mr. Barrera and Ms. Barrera filed a joint petition. Chase was scheduled as an unsecured Creditor in the Barreras' Schedules and inadvertently filed an unsecured claim–overlooking its security interest perfected on the Certificate of Title. *See Id.*

65. Unlike this case, the Barreras' Schedules **actually disclosed** the automobile as an asset. Also, unlike this case, Chase's lien **was not** a consensual lien, but instead had its genesis in a final judgment for money damages. Just like this case, the Plan did not pay 100% to unsecured Creditors (notwithstanding, the Debtor's counsel's assertion in paragraph fourteen of the motion that the debts

at issue were "fully satisfied under the Plan"). And unlike *Barrera,* the Debtor in this case failed to even disclose that her husband was a CoDebtor on the loans owed to Creditor. *See Id.*

66. In addition, the cases cited by *Barrera* hold that a Creditor's lien is waived only where a secured creditor deliberately, and not through error or inadvertence, files its claim as unsecured he thereby waives it in favor of the estate, and cannot, after adjudication, assert it. *See* Salyersville Nat'l Bank v. Bailey (In re: Bailey), 664 F.3d 1026, 1027 (6th Cir. 2011). The Debtor doesn't even make an assertion in the motion that Creditor deliberately filed an unsecured claim.

67. Lastly, an important point of distinction is that in *Barrera* and all cases cited therein, **both owners** of the collateral filed bankruptcy. This case is distinct because the husband has never filed bankruptcy.

68. If the Debtor is allowed to succeed in effectively voiding this consensual purchase money security interest in the Mustang, the husband will get a complete windfall and get the benefit of a judicially imposed lien release via the bankruptcy court when he never filed bankruptcy in the first place. What is more, it should be pointed out that even if the husband had filed bankruptcy with the Debtor, Creditor's lien is a **consensual lien**, not a judicial lien as was the case in *Barrera* and thus is not voidable.

4. **EVEN IF CREDITOR'S SECURITY INTEREST IS DEEMED WAIVED, SUCH A WAIVER WOULD ONLY EXTEND TO THE DEBTOR'S OWNERSHIP INTEREST IN THE MUSTANG**

69. As noted above, state law determines the extent and nature of security interests in motor vehicles.

70. Section 319.22(2)(a)1.a., Florida Statutes provides, in relevant part: "When a motor vehicle or mobile home is registered in the names of two or more persons as co-owners in the alternative by the use of the word "or," such vehicle shall be held in joint tenancy......This provision shall apply even if the co-owners are husband and wife".

71. An estate by the entirety in a motor vehicle cannot be established by extrinsic evidence when the title is registered in the owners' names using the disjunctive form "or." The fact that the ownership involved is between husband and wife is irrelevant and the language of the statute is controlling. *See* In re Mastrofino, 247 B.R. 330, 330 (Bankr. M.D. Fla. 2000).

72. As shown on the Certificate of Title, the husband and the Debtor are joined as owners by **"OR"** on the title to the Mustang. No one disputes this. This being the case, the Debtor and her husband are joint tenants and they each have a one-half, severable interest in the Mustang. *See id*.

73. As a practical matter, this means several things:

(A) Even if the Debtor "wins" she still loses because Creditor retains its lien against the Mustang as to her husband's interest because he has never filed bankruptcy or otherwise modified Creditor's interests;

(B) Assuming Creditor prevails in state court on Counts I and II for money damages against the husband, the Mustang will **still** be subject to the execution of the Writ of Replevin because Creditor's lien will remain attached to the husband's interest.

(C) If Creditor filed its Amended Complaint solely against the husband, the Amended Complaint would have been subject to dismissal for failure to name the Debtor as an indispensable party/joint owner. As a matter of law, proceeding without giving Debtor notice would violate her right to due process.

(D) Notwithstanding the Debtor's discharge, Creditor had no choice but to name both Debtor and her husband to be able to recover the vehicle and to do as Creditor did here–by drafting an abundantly clear Complaint that stated no money damages were being sought against the Debtor.

(E) It is abundantly clear that Creditor should not be subject to sanctions, costs or attorney's fees, or punitive damages.

### IV. REQUEST FOR PARTIAL FINDINGS AND AFFIRMATIVE STATEMENT THAT COUNTS I AND II OF THE STATE COURT COMPLAINT ARE NOT STAYED

74. As the Court is aware, Creditor's Motion for Summary Judgment is scheduled to be heard at **10:30 a.m. on Wednesday, February 7, 2018**, before the Circuit Court in St. Johns County. As outlined above, counts I and II of the Amended Complaint in the state court action are for money damages and **only seek relief from the Debtor's non-filing husband** whose personal obligation to repay the debts at issue has not been discharged. There is no CoDebtor stay in effect.

75. Disposition of counts I and II in the state court action have no bearing on the issues raised in the Debtor's motion. As such, if this Court decides to take this matter under advisement before

issuing a ruling, there is no reason for this Court to stay those portions of the state court action that have nothing to do with the Debtor, or the Mustang.

## V.  RELIEF SOUGHT

Based on the foregoing facts and legal authorities, Creditor requests this Court to grant the following relief:

(1) Immediate entry of an order that specifically states that the state court action is **not stayed** and may proceed against Charles Hood as to Counts I and II of the Amended Complaint;

(2) A finding that Creditor is not liable to the Debtor for any damages, costs or attorney's fees;

(3) A finding that Creditor's security interest is unaffected by the bankruptcy discharge and remains a valid lien on title to the Mustang and that assuming Creditor is owed any sum of money as to Counts I and II of the Amended Complaint in state court, that Creditor is entitled to possession of, and to sell the vehicle via replevin;

(4) A finding that Creditor is entitled to its attorney's fees and costs taxable jointly and severally against the Debtor (for bringing this motion and choosing to reenter "the arena" by reopening this case based on a motion without merit) and Debtor's bankruptcy counsel.

**Heckman Law Group, P.L.**

By: */s/ Chad D. Heckman*
Florida Bar No.: 0526029
Attorney for Creditor
P.O. Box 12492
Tallahassee, Florida 32317-2492
Phone: (850) 583-4161
E-Service: eservice@heckmanlawgroup.com
HLG File No: 16-357

## **CERTIFICATE OF SERVICE**

    **I CERTIFY** that a copy of the foregoing pleading was furnished to the addresses below by U.S. Mail and/or electronic means via the CM/ECF system on February 5, 2018 to:

Douglas W. Neway, P.O. Box 4308, Jacksonville, FL 32201
*Trustee* (usual place of business)

Undine George, Anastasia Law, P.L. 107A 11th St., St. Augustine, FL 32080
*Attorney for Debtor* (usual place of business)

Lisa A. Hood, 1881 Forest Glen Way, Saint Augustine, FL 32092
*Debtor* (usual place of abode)

                                         **Heckman Law Group, P.L.**

                                         By: */s/ Chad D. Heckman*
                                         Florida Bar No.:  0526029
                                         Attorney for Creditor
                                         P.O. Box 12492
                                       Tallahassee, Florida 32317-2492
                                       Phone:  (850) 583-4161
                                       E-Service:  eservice@heckmanlawgroup.com
                                       HLG File No: 16-357